SPALDING, Appellee,

v.

COULSON et al., Appellants.

[Cite as *Spalding v. Coulson* (1995), 104 Ohio App.3d 62.]

Nos. 64962, 65185 and 66457.

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Decided May 22, 1995.

66

*Arthur F. Clarke,* for appellee.

*Kraus & Kraus* and *Gary S. Okin,* for appellant Robert Coulson.

*Don C. Iler Co., L.P.A.,* and *Don C. Iler,* for appellant James P. Celebrezze.

HARPER, Judge.

The Court of Common Pleas of Cuyahoga County, Domestic Relations Division, issued a judgment of divorce on February 10, 1976, case No. D–64756, as to defendant-appellant, Robert Coulson, and third-party defendant, Joan Coulson. Joan was represented by plaintiff-appellee, Walter T. Spalding, in postdecree matters. The instant appeal involves events which were a byproduct of that representation.

I

In accordance with the remand from the Supreme Court of Ohio as pronounced in *Coulson v. Coulson* (1983), 5 Ohio St.3d 12, 5 OBR 73, 448 N.E.2d 809, the domestic relations court entered a judgment on July 18, 1985. Robert was ordered therein to pay $31,000 plus interest to Joan in addition to $40,000 toward her attorney fees. Joan appealed this judgment, and we reversed in part and remanded the action to the domestic relations court on the issues of temporary alimony and support. See *Coulson v. Coulson* (Oct. 9, 1986), Cuyahoga App. No. 50771, unreported.

Meanwhile, Joan executed an assignment on October 17, 1985.[1] The assignment reads as follows:

"I, Joan Coulson, hereby agree in consideration of services previously rendered and to be rendered by Walter T. Spalding, Jr. [to assign to] all of my right, title and interest to the cash award of $31,000.00 plus interest accrued, and the $40,000.00 award for attorney fees and expenses made by Judge John L. Maxwell in his Judgment Entry dated July 18, 1985, Case No. D–64756. This sum will be applied against the outstanding balance owed to Mr. Spalding on a series of notes, previously executed by myself, after payment of the current outstanding balance which is not secured by any note."

Spalding forwarded the assignment to Robert in July 1987 after Joan informed him that she would no longer require his legal services. Joan then retained third-party defendant/appellant, James P. Celebrezze ("J.P. Celebrezze"), his brother, Frank Celebrezze ("F. Celebrezze"), and F. Celebrezze's law firm, now Sindell, Rubenstein, Einbund, Pavlik & Novak ("S & R"), to represent her in any ensuing divorce matter, and to bring the divorce proceedings to a conclusion.

Joan, individually and as president of JACC, Inc., and Robert subsequently signed an agreement on December 28, 1987. J.P. Celebrezze signed the agreement as a witness to Joan's signatures. The agreement provided:

"WHEREAS, the parties do now desire to forever and completely settle, resolve and discharge all claims, demands and issues existing between them including, but not limited to those involved in the aforedescribed litigation and to satisfy and discharge the terms of the Judgment Entry entered on July 18, 1985,

---

1. Spalding represented Joan from 1976 to 1987. She commenced a legal malpractice action against Spalding, *Coulson v. Spalding*, CV–139803, in the Court of Common Pleas of Cuyahoga County. Spalding filed a counterclaim in which he sought compensation for services rendered. Judgment was entered in favor of Spalding on his counterclaim in the amount of $100,000, representing attorney fees owed plus interest from December 28, 1987.

"NOW THEREFORE, in consideration of the foregoing promises, and the mutual promises and undertakings hereinafter specified, Joan, JACC and Robert agree as follows:

"1. On or before December 31, 1987, Robert shall pay to Joan the sum of One Hundred Thousand Dollars ($100,000.00) provided however, that as a result of an Assignment executed by Joan to her former attorney on October 17, 1985 (a copy of which Assignment is annexed hereto as Exhibit B), the One Hundred Thousand Dollars ($100,000.00) payment shall be made to James P. Celebrezze as Escrow Agent to secure proper payment pursuant to the Assignment. Said funds shall be held by Mr. Celebrezze in an interest-bearing account and shall be retained by him until such time as he obtains a complete written and executed release and discharge from the assignee named in the aforedescribed Assignment of all claims and demands which he may have against Robert pursuant to the Assignment and resulting from Robert's knowledge thereof. Said document of release and discharge shall be submitted to Robert and/or his attorneys for review prior to release of the escrowed funds, and such release and discharge and the form and substance shall acknowledge their approval thereof in writing prior to the release of any funds from escrow, which approval shall not be unreasonably withheld. It is understood that Robert shall have no further right or interest in the funds to be paid pursuant to this paragraph 1 other than to insure that any obligations he may have pursuant to the aforedescribed Assignment have been fully satisfied and discharged."

F. Celebrezze forwarded the agreement, which was signed by Joan, to Robert's counsel, Gary S. Okin, on December 28, 1987. F. Celebrezze advised Okin to obtain Robert's signature on the agreement and to return an executed copy of it along with "the initial payment in the sum of $100,000.00 payable to James P. Celebrezze, Escrow Agent."

Robert signed the agreement and issued a check dated December 29, 1987 for $100,000. The payee on the check was "James Celebrezze, Escrow Agent," in accordance with the agreement. The check further contained the notation "Payment to Joan Coulson pursuant to Agreement dated December 28, 1987."

J.P. Celebrezze endorsed the check and deposited it in an account at TransOhio Savings Bank ("TransOhio"). TransOhio records reveal that the $100,000 was deposited in an account entitled "JAMES CELEBREZZE TR FOR JOAN COULSON" ("the escrow account"), on December 29, 1987. They also reveal that a check was written the following day, December 30, 1987, on the escrow account, naming an S & R escrow account as the payee of $20,000. According to both J.P. and F. Celebrezze, $10,000 of the $20,000 was later deposited in a second account. TransOhio records confirm that by February 16, 1988, the

remainder of the original $100,000 was depleted, having been distributed to either Joan or her creditors.

Robert learned of the disbursement of the funds subsequent to his payment of an additional $110,000 to Joan pursuant to paragraphs 2a–2k of the agreement. Joan agreed to convey all of her interest in a Mr. Hero restaurant in exchange for the payment.

Finally, on June 6, 1988, the domestic relations court signed a judgment entry that declared satisfaction of its July 1985 judgment. The entry was approved by both Joan and Robert.

## II

Spalding commenced this action solely against Robert in the Court of Common Pleas of Cuyahoga County, CV–157071, on September 19, 1988. Spalding asserted that notwithstanding Robert's knowledge of the assignment, Robert had entered into the agreement with Joan in satisfaction of the July 1985 judgment without notifying Spalding of the satisfaction. Robert's actions were allegedly intentional and malicious, and deprived Spalding of his rights. Moreover, Spalding averred, Robert next approved of the domestic relations court's judgment of June 6, 1988, wherein the satisfaction of judgment was journalized, in the absence of Robert's obtaining a release from Spalding. Spalding alleged that the judgment entry was wrongful by virtue of the assignment.

Robert responded to Spalding's claims by filing a third-party complaint against Joan, JACC, Inc., and J.P. Celebrezze. The basis for the third-party complaint was the claim that Joan had breached the agreement and that J.P. Celebrezze had breached his fiduciary duty, these actions entitling Robert to indemnification and contribution pursuant to R.C. 2307.21 and 2307.32.[2]

Spalding thereafter filed a motion for summary judgment against Robert on August 12, 1991, to which Robert responded on September 13, 1991. Robert filed a motion for summary judgment on March 23, 1992 against Joan on the breach of contract claim, and against J.P. Celebrezze on the breach of fiduciary duty claim. J.P. Celebrezze responded to the motion, but Joan did not file a brief in opposition.

The trial court granted Robert's motion for summary judgment on July 7, 1992 against Joan and J.P. Celebrezze, except on the claim for punitive damages

---

**2.** Joan filed a counterclaim against Robert on December 5, 1991, but the trial court dismissed it pursuant to Robert's motion on January 16, 1992. Joan did not file a notice of appeal from this dismissal.

against the latter party. Spalding's motion for summary judgment was also granted against Robert.[3] The trial court's judgment reads in part:

"Plaintiff Spalding's motion for summary judgment contains an affidavit establishing the validity of the 'assignment' agreement between plaintiff and Joan Coulson. Further, Spalding has established that Robert Coulson had knowledge of such agreement by means of his answer and response to requests for production of documents. Because defendant, third-party plaintiff Robert Coulson has failed to respond to the motion with affidavits or other evidence described in Civ.R. 56(C), plaintiff Spalding's affidavit and supporting documents must be taken as true. *Marymount Hospital v. Porozynski* (Dec. 19, 1991), Cuyahoga App. No. 59670, unreported [1991 WL 271439]. As a result, the Court finds that no genuine issue of material fact remains to be litigated and that summary judgment should be granted in favor of plaintiff Spalding and against defendant, third-party plaintiff Robert Coulson.

"The third-party defendants Joan Coulson and James Celebrezze's response to the third-party plaintiff Robert Coulson's properly filed and supported motion for summary judgment is equally lacking in evidentiary support sufficient to satisfy Rule 56(C). The allegations in Robert Coulson's motion for summary judgment were properly supported by excerpts of depositions and documents filed with the Court. In response, third-party defendant Celebrezze submitted only an unsworn memorandum containing no documentary evidence to counter the evidence of third-party plaintiff Robert Coulson. Third-party defendant Joan Coulson failed to submit a response. As a result, the evidence submitted by third-party plaintiff Robert Coulson must be accepted as true. *Marymount Hospital, supra.*

"Taking the properly supported allegations in Robert Coulson's motion as true, this Court finds that both third-party defendants Celebrezze and Joan Coulson have failed to present evidence in defense of their position that they should not be required to indemnify third-party plaintiff Robert Coulson for the amount improperly distributed from the escrow account by escrow agent James P. Celebrezze. As no genuine issue of material fact exists to litigate, and the third-party defendants have failed to properly defend their position, this Court finds that defendant, third-party plaintiff Robert Coulson's motion for summary judgment shall be granted against third-party defendants Joan Coulson and James P. Celebrezze except on the claim for punitive damages and attorney fees against third-party defendant Celebrezze."

On September 4, 1992 and December 4, 1992, J.P. Celebrezze and Joan each filed a motion for an order directing Spalding to mitigate his damages. J.P.

---

3. A myriad of motions were filed on behalf of all parties to the action, but only those motions which are relevant to this appeal are mentioned in this opinion.

Celebrezze also filed a motion to dismiss Robert's claim for punitive damages, which remained pending following the trial court's grant of summary judgment. The trial court granted the motion to dismiss Robert's punitive damages claim, and denied the motions for an order for mitigation of damages on December 22, 1992.

The trial court issued a judgment on the same date:

"In July, 1992, the Court granted summary judgment to plaintiff on his complaint and to defendant on his third-party complaint. Final judgment was not entered at that time due to an unresolved claim by defendant for punitive damages on his third-party complaint. This claim has been dismissed (see separate order) and thus all claims have been resolved.

"It is ORDERED that plaintiff, Walter T. Spalding, Jr. recover from defendant Robert Coulson the sum of $71,000.00 plus interest and costs. It is further

"ORDERED that third-party defendants Joan Coulson and James Celebrezze indemnify defendant for any amounts he pays to plaintiff on this judgment."

Robert appealed from this judgment on January 20, 1993; J.P. Celebrezze appealed on January 27, 1993 (App. No. 64962). Robert also filed a notice of appeal on March 5, 1993 from the trial court's *nunc pro tunc* order of February 12, 1993, in which the court ordered that the December 1992 judgment would bear interest at the statutory rate of ten percent per annum from June 6, 1988 (App. No. 65185). Finally, Robert filed a third notice of appeal on November 9, 1993 from the trial court's denial of his motion to reduce judgment, filed September 13, 1993 (App. No. 66457). This court consolidated App. Nos. 64962, 65185 and 66457 for record, briefing, hearing and disposition on May 23, 1994.[4]

III Robert Coulson's Appeal, App. No. 64962

Robert assigns error as follows:

"FIRST ASSIGNMENT OF ERROR

"The trial court erred in failing to award compensatory damages in favor of Defendant–Appellant on his Third–Party Complaint for breach of fiduciary duty against Third–Party Defendant/Cross–Appellant James Celebrezze.

"SECOND ASSIGNMENT OF ERROR

"The trial court erred in dismissing Defendant–Appellant's Claim for Punitive Damages and Attorney Fees.

---

**4.** This court dismissed the consolidated appeals for lack of a final appealable order on May 23, 1994 due to no judgment having been entered as to third-party defendant, JACC, Inc. The appeals were reinstated on June 28, 1994 following the trial court's June 3, 1994 judgment entry, which provided that "there is no just reason for delay."

72

"* * *5

"FOURTH ASSIGNMENT OF ERROR

"The trial court erred in awarding Spalding a Judgment against Appellant which failed to consider Spalding's Judgment against Joan Coulson, where both Judgments represent Spalding's legal fees due from Joan Coulson.

"FIFTH ASSIGNMENT OF ERROR

"The trial court erred in awarding summary judgment in favor of Plaintiff Walter T. Spalding, Jr. and against Defendant–Appellant Robert Coulson."

A

This court will review Robert's assignments of error out of order, beginning with his fifth assignment of error. Robert submits in his fifth assignment of error that Spalding failed to supply sufficient proof to the trial court that either Joan signed the assignment or that the assignment was supported by adequate consideration. He argues, therefore, that the trial court's grant of summary judgment in favor of Spalding with regard to his recovery of the escrow funds was fatally flawed and unsupportable as a matter of law.

 The granting of summary judgment is appropriate only if there is no genuine issue as to any material fact, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Toledo's Great E. Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 201, 24 OBR 426, 428, 494 N.E.2d 1101, 1103; Civ.R. 56(C). An order granting summary judgment will, therefore, be upheld only where the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law when construing the evidence most strongly in favor of the nonmoving party. *Johnson v. New London* (1988), 36 Ohio St.3d 60, 521 N.E.2d 793; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274. Summary judgment is a procedural device which is used to terminate litigation and, therefore, must be awarded with caution with all doubts resolved in favor of the nonmoving party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333, 587 N.E.2d 825, 831; see, also, *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138, 140.

 With regard to procedure, "[u]pon a motion for summary judgment pursuant to Civ.R. 56, the burden of establishing that the material facts are not in dispute and that no genuine issue of fact exists is on the party moving for

5. Robert's third assignment of error relates to App. No. 66457 and will be separately addressed below.

summary judgment. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.Ed.2d 46." *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 492. However, "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Celotex v. Catrett* (1986), 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 273. See, also, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 113–114, 526 N.Ed.2d 798, 800–801." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

 The record in the present case amply demonstrates that the trial court did not err when it granted Spalding's motion for summary judgment against Robert with regard to the validity of the assignment. Spalding filed a supplement to his motion on March 23, 1992, to which he attached an affidavit setting forth that Joan had signed the assignment in his presence on October 17, 1985. Moreover, the record demonstrates that the assignment was supported by consideration. Spalding provided legal services to Joan prior to the assignment, and the assignment resulted from the debt owed to Spalding by Joan, a $100,000 debt clearly confirmed in *Coulson v. Spalding*, CV–139803. Robert failed to counter this evidence from Spalding, an obligation imposed upon him by *Celotex* and *Wing*. Consequently, reasonable minds can come to only one conclusion, *i.e.,* Joan signed the assignment based upon Spalding's representation in the divorce proceedings, and her failure to compensate Spalding for the representation. The fact that the assignment states it was meant to satisfy "services rendered and to be rendered" does not alter our opinion, since there is no dispute that Spalding had provided services for which he had not been compensated, in the amount of $100,000.

Robert's fifth assignment of error is overruled.

## B

The trial court rendered judgment in favor of Spalding in the amount of $71,000, the December 1992 judgment. Robert, in his fourth assignment of error, submits that the judgment allows for Spalding to potentially recover $171,000 for his legal services, which is $71,000 in excess of the value of his services as set by the $100,000 judgment in *Coulson v. Spalding*, CV–139803. Robert thus suggests that the trial court's journal entry should have reflected that the $71,000 judgment would be reduced by any amounts Spalding recovered from Joan on the $100,000 judgment. Pursuant to App.R. 12(A) and Spalding's acknowledgement that this court may wish to remand this case to the trial court for a clarification of its judgment, we do so. The June 14, 1992 and December 22, 1992 judgment entries of the trial court do not specify whether Spalding is entitled to an amount

in excess of the $100,000 judgment ordered on the counterclaim in the legal malpractice action. In other words, this court does not know whether the $71,000 judgment is meant to supplement the $100,000 judgment. Accordingly, the trial court is ordered to issue a *nunc pro tunc* entry which explains its judgment of December 22, 1992 with regard to the judgment entered by a separate trial court in *Coulson v. Spalding,* CV–139803.

Robert's fourth assignment of error is sustained.

## C

Robert's remaining two assignments of error address concerns connected to third-party defendant/appellant, J.P. Celebrezze. In his first assignment of error, Robert presents a four-part argument in which he takes issue with the trial court's failure to award compensatory damages on his third-party complaint for breach of fiduciary duty against J.P. Celebrezze.

Robert first asserts that compensatory damages should have been awarded on his claim against J.P. Celebrezze beyond the trial court's order that J.P. Celebrezze indemnify Robert for any sums paid to Spalding on the $71,000 judgment. Second, he claims that J.P. Celebrezze, at a minimum, should have been ordered to restore wrongfully disbursed escrow funds. Third, Robert submits that the indemnification order failed to take into account the attorney fees expended by him in defending against Spalding's claims.[6] Finally, he avers that the indemnification order was insufficient because he must pay out funds in excess of the original $100,000 (as was deposited in the escrow account) in order to recoup any monies from either Joan or J.P. Celebrezze.

█ The rule of indemnity provides that:

" '[W]here a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas the person committing the wrongful act is primarily liable.' *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 14, 70 O.O.2d 6, 8, 321 N.E.2d 787, 789.

"Therefore, one party must be 'chargeable' for the wrongful act of another as a prerequisite for indemnity." *Convention Center Inn, Ltd. v. Dow Chemical Co.* (1990), 70 Ohio App.3d 243, 247, 590 N.E.2d 898, 900.

---

6. Robert argues that the trial court erred in not awarding him attorney fees in his second assignment of error; therefore, this issue will be addressed below.

■ Indemnification is a right which arises only within the context of a relationship wherein one party is found to be vicariously liable for the acts of a tortfeasor. Vicarious liability can be found only when the parties possess a special relationship that gives rise to vicarious liability as a matter of law. The Supreme Court of Ohio stated as follows with regard to the right of indemnification:

"An implied contract of indemnity should be recognized in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other. * * * Relationships which have been found to meet this standard are the wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant. * * * *Indemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence.*" (Emphasis added.) *Reynolds v. Physicians Co. of Ohio* (1993), 68 Ohio St.3d 14, 16, 623 N.E.2d 30, 31–32.

■ In the present case, the trial court granted Robert's motion for summary judgment except on the claim for punitive damages. The court thus found that J.P. Celebrezze breached a fiduciary duty, since Robert asserted this claim in his motion for summary judgment. Robert was, however, chargeable with the acts attributed to him by Spalding when the trial court granted Spalding's motion for summary judgment against Robert. Therefore, the trial court concluded that both Robert and J.P. Celebrezze had committed wrongful acts that were distinguishable from one another. Robert failed to comply with obligations set forth in the assignment and agreement, whereas J.P. Celebrezze breached a fiduciary duty with regard to the $100,000 escrow account. Coulson and J.P. Celebrezze "acted independently of one another and are, therefore, responsible only for the results of their own negligence." *Id.* at 16, 623 N.E.2d at 32. Indemnification is not permitted as a matter of law under these circumstances. *Id.*

Robert's first assignment of error is sustained.

## D

In his second assignment of error, Robert contends that the trial court erred in dismissing his claims for punitive damages and attorney fees. He attacks the ruling both procedurally and substantively by arguing that J.P. Celebrezze's motion to dismiss was untimely filed and that the request for punitive damages and attorney fees is amply supported by the record.

### 1. Civ.R. 12(B)(6)

■ With regard to Robert's first argument, a motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests

the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 605 N.E.2d 378. It is well settled that "when a party files a motion to dismiss for failure to state a claim, all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party." *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 60, 565 N.E.2d 584, 589, citing *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 755–756. While the factual allegations of the complaint are taken as true, "[u]nsupported conclusions of a complaint are not considered admitted * * * and are not sufficient to withstand a motion to dismiss." *State ex rel. Hickman v. Capots* (1989), 45 Ohio St.3d 324, 544 N.E.2d 639. In light of these guidelines, in order for a court to grant a motion to dismiss for failure to state a claim, it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *O'Brien v. Univ. Community Tenants Union* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 224, 327 N.E.2d 753, 755.

Courts are generally confined to the averments contained in the complaint in resolving a Civ.R. 12(B)(6) motion. Evidentiary materials beyond the averments cannot be considered unless the motion is converted into one for summary judgment, with appropriate notice, under Civ.R. 56. *State ex rel. Baran v. Fuerst* (1990), 55 Ohio St.3d 94, 563 N.E.2d 713.

Herein, Robert initially asserts that J.P. Celebrezze's motion to dismiss his punitive damages claim presented matters outside the pleadings and, therefore, that the trial court should have treated it as a motion for summary judgment.[7] He then argues that since Civ.R. 56(B) permits the filing of motions for summary judgment only with leave of court once an action is set for pretrial or trial, J.P. Celebrezze's motion should have been denied on procedural grounds as being untimely filed.

This court addressed this issue in *Thompson v. Cent. Ohio Cellular, Inc.* (1994), 93 Ohio App.3d 530, 538–539, 639 N.E.2d 462, 467–468, wherein we stated:

"Appellant cites *State, ex rel. Scanlon v. Deters* (1989), 45 Ohio St.3d 376, 377, 544 N.E.2d 680, 681–682, for the proposition that the presence of 'extraneous facts' before a lower court on a motion to dismiss creates the presumption that the court treated the motion as one for summary judgment. We disagree. In *Scanlon,* the appellate court overruled the defendant's motion to dismiss Scanlon's mandamus complaint on 12(B)(6) grounds. The court then dismissed

---

7. Spalding filed a complaint for foreclosure with the Court of Common Pleas of Cuyahoga County on August 31, 1992, *Spalding v. Coulson,* CV–238049. The matter now referred to by Robert is a preliminary judicial report filed in the foreclosure action which disclosed Spalding's first lien on Joan's home.

Scanlon's complaint *sua sponte* on the grounds that Scanlon had an adequate remedy at law. The court's conclusion that Scanlon had an adequate remedy at law was based on matters outside the pleadings. Moreover, both parties submitted matters outside the pleadings, and Scanlon urged the lower court to treat the motion to dismiss as a motion for summary judgment. The supreme court, in affirming the 'dismissal,' held that the lower court actually granted a summary judgment. In the present case, neither party has submitted evidentiary materials outside the pleadings (although appellees' brief does contain factual allegations outside the pleadings), nor has either party requested that the trial court treat the motion as one for summary judgment. Finally, we do not read *Scanlon, supra* as creating a 'presumption' that the lower court has treated a motion to dismiss as a motion for summary judgment, where the motions have presented 'extraneous facts.' Rather, it is a seminal point of appellate law that the judgments of the lower courts are presumed valid. *Makranczy v. Gelfand* (1924), 109 Ohio St. 325, 142 N.E. 688. Thus, in the absence of some showing to the contrary, there is a presumption that a trial court performed its duty and did not rely upon anything in reaching its decision that it should not have relied upon. *City of Columbus v. Guthmann* (1963), 175 Ohio St. 282, 25 O.O.2d 115, 194 N.E.2d 143. See, also, *Boyd v. Edwards* (1982), 4 Ohio App.3d 142, 150, 4 OBR 234, 243–244, 446 N.E.2d 1151, 1159–1600, and *State v. Coombs* (1985), 18 Ohio St.3d 123, 125, 18 OBR 153, 154–155, 480 N.E.2d 414, 416–417. *While we acknowledge that appellees' motion, as well as the brief before this court, presents 'extraneous facts,' this court will presume that the trial court based its decision solely on the face of the complaint.*" (Emphasis added.)

 The record in the present case fails to indicate that the trial court treated J.P. Celebrezze's motion to dismiss as one for summary judgment. We, therefore, presume that the trial court based its decision solely on the face of Robert's complaint for punitive damages and attorney fees. *Thompson.*

## 2. Punitive Damages/Attorney Fees

 Actual damages in an underlying cause of action must be proven prior to an award of punitive damages. *Shimola v. Nationwide Ins. Co.* (1986), 25 Ohio St.3d 84, 25 OBR 136, 495 N.E.2d 391; *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 20 OBR 213, 485 N.E.2d 704; see, also, *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273; *Richard v. Hunter* (1949), 151 Ohio St. 185, 39 O.O. 24, 85 N.E.2d 109. A civil action in Ohio thus may not be filed purely for punitive damages. *Bishop,* 20 Ohio St.3d at 28, 20 OBR at 214, 485 N.E.2d at 705–706. "Rather, punitive damages are awarded as a mere incident of the cause of action in which they are sought. *Id.* Thus,

compensable harm stemming from a cognizable cause of action must be shown to exist before punitive damages can be considered." *Moskovitz,* 69 Ohio St.3d at 650, 635 N.E.2d at 342.

■ Generally, the rule in Ohio is that irrespective of the motive of the defendant, and regardless of how willful the breach, an action for breach of contract does not allow an award of punitive damages. *Digital v. Analog Design Corp. v. N. Supply Co.* (1989), 44 Ohio St.3d 36, 45–46, 540 N.E.2d 1358, 1366–1367; see *Kruse v. Vollmar* (1992), 83 Ohio App.3d 378, 386, 614 N.E.2d 1136, 1141–1142. Moreover, without an award of punitive damages, there can be no award for attorney fees. *Digital & Analog Design Corp. v. N. Supply Corp.* (1992), 63 Ohio St.3d 657, 662, 590 N.E.2d 737, 742.

■ An exception to this general rule is when the actions which constitute the breach of contract also amount to an independent, willful tort. If the necessary showing of malice is present, punitive damages may be recovered. *Ali v. Jefferson Ins. Co.* (1982), 5 Ohio App.3d 105, 107, 5 OBR 220, 222, 449 N.E.2d 495, 497–498; see *Kruse,* 83 Ohio App.3d at 386, 614 N.E.2d at 1141–1142; see, also, *Sweet v. Grange Mut. Cas. Co.* (1975), 50 Ohio App.2d 401, 406–407, 4 O.O.3d 399, 401–402, 364 N.E.2d 38, 41–42.

Actual malice consists of either a state of mind characterized by hatred, ill will or a spirit of revenge or a conscious disregard for the rights and safety of others which results in a strong probability of substantial harm to the affected persons. *Arthur Young & Co. v. Kelly* (1993), 88 Ohio App.3d 343, 352, 623 N.E.2d 1303, 1308–1309.

■ With regard to attorney fees, absent statutory authorization, a prevailing party may not generally recover attorney fees unless the losing party acted in bad faith, vexatiously, wantonly, obdurately or for oppressive reasons. *Kabatek v. Stackhouse* (1983), 6 Ohio St.3d 55, 6 OBR 73, 451 N.E.2d 248; *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 75 O.O.2d 224, 347 N.E.2d 527. In addition, an aggrieved party may recover reasonable attorney fees where the award of punitive damages is proper. *Hutchinson v. J.C. Penney Cas. Ins. Co.* (1985), 17 Ohio St.3d 195, 17 OBR 432, 478 N.E.2d 1000.

### 3. Application to Present Case

■ Herein, Robert, in his third-party complaint filed on April 26, 1991, set forth the following allegations with regard to his claim for punitive damages against J.P. Celebrezze:

*"SECOND CAUSE OF ACTION*

" * * *

"14. On or about December 29, 1988, third party defendant James P. Celebrezze received from defendant and third party plaintiff Robert Coulson a check in the sum of $100,000.00 made payable to third party defendant James P. Celebrezze as escrow agent.

"15. Said funds were submitted by defendant and third party plaintiff Robert Coulson to third party defendant James P. Celebrezze in conformity with the provisions of enumerated Paragraph 1 of the Agreement.

"16. Third Party Defendant James P. Celebrezze accepted the funds to be held by him as escrow agent.

"17. Although the sum of $100,000.00 was deposited with third party defendant James P. Celebrezze as escrow agent, to be held and paid out only on the happening of certain conditions precedent, and although third party defendant James P. Celebrezze accepted the funds under such terms and conditions, and although the conditions precedent for the release of the funds were never met, third party defendant James P. Celebrezze did, in or about February of 1988, misappropriate, wrongfully convert and wrongfully distribute the escrow funds in the sum of $100,000.00, without authority, consent or knowledge of defendant and third party plaintiff, by delivering and paying same over to the third party plaintiffs Jane Coulson and/or JACC, Inc.

"18. In wrongfully paying and delivering the escrow funds to third party defendants Jane Coulson and/or JACC, Inc., defendant [Celebrezze] breached his fiduciary duty owed to defendant and third party plaintiff Robert Coulson and acted in wanton disregard of defendant and third party Plaintiff Robert Coulson's rights.

" * * *

"WHEREFORE, defendant and third party plaintiff Robert Coulson prays for judgment on his Amended Third Party Complaint as follows:

" * * *

"2. For judgment on the Second Cause of Action in the sum of One Hundred Thousand Dollars ($100,000.00) plus interest from December 29, 1988, compensatory damages; One Hundred Thousand Dollars ($100,000.00), punitive damages; attorney fees and costs."

Robert's third-party complaint alleged sufficient facts to state a cause of action for breach of fiduciary duty [8] and punitive damages. Robert's allegation that J.P.

---

8. See discussion pertaining to establishment of fiduciary duty in J.P. Celebrezze's first assignment of error, below.

Celebrezze disbursed the $100,000 to unintended parties, including himself and F. Celebrezze's law firm, alleges a conscious disregard for the rights and safety of others which results in the strong probability of substantial harm to affected persons. Based on the foregoing, the trial court erred in dismissing Robert's claims for attorney fees and punitive damages. Civ.R. 12(B)(6); *Ali; Kelly.*

Robert's second assignment of error is sustained.

## IV J.P. Celebrezze's Appeal, App. No. 64962

J.P. Celebrezze, in his appeal, sets forth the following assignments of error:

"FIRST ASSIGNMENT OF ERROR

"The trial court erred in designating Cross–Appellant James P. Celebrezze an escrow agent.

"SECOND ASSIGNMENT OF ERROR

"The trial court erred in failing to find that the proximate cause of any damages to Appellant was Appellant himself and his representatives.

"THIRD ASSIGNMENT OF ERROR

"The trial court erred in failing to find that Appellant and his representatives were estopped from making a claim against Cross–Appellant."

### A

J.P. Celebrezze attacks the trial court's conclusion that he was an escrow agent with regard to the $100,000. Rather, he asserts that he properly acted as a trustee on the account for the benefit of Joan's creditors.

 A fiduciary duty may arise either out of contract or from an informal relationship where both parties understand that the relationship imposed a special trust or confidence between them. *Stone v. Davis* (1981), 66 Ohio St.2d 74, 78, 20 O.O.3d 64, 66, 419 N.E.2d 1094, 1097–1098; *Umbaugh Pole Bldg. Co. v. Scott* (1979), 58 Ohio St.2d 282, 12 O.O.3d 279, 390 N.E.2d 320. "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Stone,* 66 Ohio St.2d at 78, 20 O.O.3d at 66–67, 419 N.E.2d at 1097–1098, quoting *In re Termination of Employment* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 516–517, 321 N.E.2d 603, 608–609. The person who occupies a fiduciary relationship to another acts as an agent to the other, owing him or her the utmost loyalty and honesty. *Testa v. Roberts* (1988), 44 Ohio App.3d 161, 165, 542 N.E.2d 654, 659–660. See, also, *Thompson, supra.*

Moreover, as is particularly applicable to the facts before us, Black's Law Dictionary (5 Ed.1979) 564 defines "fiduciary capacity" as follows:

"One is said to act in a 'fiduciary capacity,' or to receive money or contract a debt in a 'fiduciary capacity,' when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part."

In the present case, the issue is whether J.P. Celebrezze breached a fiduciary duty as an escrow agent. In *Pippin v. Kern–Ward Bldg. Co.* (1982), 8 Ohio App.3d 196, 198, 8 OBR 266, 268, 456 N.E.2d 1235, 1237–1238, this court examined "escrow" as follows:

"An escrow is a matter of agreement between parties, usually evidenced by a writing placed with a third-party depositary providing certain terms and conditions the parties intend to be fulfilled prior to the termination of the escrow. The depositary under an escrow agreement is an agent of both parties, as well as a paid trustee with respect to the purchase money funds placed in his hands. * * *

" *'Likewise, if an escrow agent neglects to carry out the instructions of a party to the escrow agreement, liability will result for the damages induced thereby.'* * * *

"The duty of the escrow agent is therefore clear—to carry out the terms of the agreement as intended by the parties. * * *

" * * * *

" * * * Escrow is controlled by the escrow agreement, placing the deposit beyond the control of the depositor and earmarking the funds to be held in a trust-like arrangement." (Emphasis *sic.*) *Id.* See, also, *Shafron Enterprises v. Midland Title Security, Inc.* (June 25, 1992), Cuyahoga App. No. 60922, unreported, 1992 WL 146842.

In the present case, the agreement specified that Robert was to pay $100,000 to J.P. Celebrezze "as Escrow Agent to secure proper payment pursuant to the Assignment." The agreement also detailed how J.P. Celebrezze was to retain the funds until the receipt of a written and executed release and discharge from Spalding.

Robert complied with the terms of the agreement insofar as he prepared a check in the amount of $100,000 with "James Celebrezze, Escrow Agent" named as the payee. The check contained a notation which indicated that the $100,000 payment was made in accordance with the agreement.

J.P. Celebrezze endorsed the check and deposited it into an account entitled "JAMES CELEBREZZE TR FOR JOAN COULSON." The $100,000 was eventually disbursed to S & R accounts, Joan and Joan's creditors.

J.P. Celebrezze testified during his deposition that he did not read the agreement prior to signing it as a witness to Joan's signatures. However, he conceded that the first paragraph of the agreement established an escrow account on behalf of the Coulsons. J.P. Celebrezze also testified that he was unaware of the assignment's existence.

Regarding the TransOhio account, J.P. Celebrezze testified that it was a trust account which he set up at the request of Joan for the purpose of paying off her bills. He explained that Robert initially requested the account because he was concerned with the payment of Joan's bills. J.P. Celebrezze was questioned as to what bills Robert was particularly concerned with, to which he responded that Joan was being sued by prior counsel.

As to the $100,000 check, J.P. Celebrezze acknowledged in his deposition that he had endorsed the check naming him as an escrow agent. He also observed the notation referring to the agreement, but he chose not to question F. Celebrezze about the agreement. F. Celebrezze was the individual who advised Robert's counsel to seek the check made payable to "James P. Celebrezze, Escrow Agent" in the first place. Joan retained both J.P. Celebrezze and F. Celebrezze to bring the divorce matter to a final conclusion. Despite the purpose of representation, J.P. Celebrezze's signature as a witness on the agreement, and his endorsement of the check, J.P. Celebrezze maintained throughout the proceedings that he knew nothing of the agreement's contents, including its designation of him as an escrow agent. In other words, J.P. Celebrezze admitted to allowing Joan to sign an agreement which purported to terminate thirteen years of litigation without reading it first.

J.P. Celebrezze filed a brief in opposition to Robert's motion for summary judgment, but failed to include any supporting evidentiary materials to refute Robert's evidence. Rather, he relied upon the principles of contract law to demonstrate no meeting of the minds with regard to the escrow arrangement. As is discussed above, J.P. Celebrezze denied any knowledge of the escrow's existence; therefore, he argued that he could not have breached his fiduciary duty because he had no knowledge of the duties imposed on him by the agreement.

J.P. Celebrezze failed to provide any evidence to the trial court, as permitted by Civ.R. 56(C), to dispute Robert's evidence, *i.e.*, the agreement, the letter written by F. Celebrezze that advised that Robert issue the check to J.P. Celebrezze as escrow agent, and the endorsed check that contained a reference to the agreement. See *Celotex; Wing.* Robert's evidence amply demonstrates the existence of an escrow account with J.P. Celebrezze as escrow agent. *Pippin; Shafron.* This court concludes that the trial court properly determined that J.P. Celebrezze was an escrow agent. *Johnson; Temple.*

J.P. Celebrezze's first assignment of error is overruled.

B

J.P. Celebrezze proceeds to argue that Robert's payment of $110,000 to Joan under paragraphs 2a–2k of the agreement was the proximate cause of Robert's damages. In other words, J.P. Celebrezze suggests that it was Robert's and/or his representatives' negligence in failing to verify whether the $100,000 was properly disbursed prior to his payment to Joan of the $110,000.

J.P. Celebrezze fails to offer any legal support for his argument that subsequent and independent acts of others absolved him of any wrongdoing with regard to the disbursement of the original $100,000. The fact remains that the trial court properly found him to be an escrow agent who failed to comply with the terms of the escrow. Robert's or his representatives' alleged negligence had nothing to do with J.P. Celebrezze's breach of *his* fiduciary duties.

J.P. Celebrezze's second assignment of error is overruled.

C

J.P. Celebrezze continues with an argument that Robert's misrepresentation to the domestic relations court in June 1988 that the July 1985 judgment had been discharged and satisfied estopped Robert from claiming that J.P. Celebrezze had breached a fiduciary duty. J.P. Celebrezze suggests that Robert waived the contractual provisions of the agreement through this misrepresentation, thereby exonerating J.P. Celebrezze of any liability for his actions.

Robert was unaware of the disbursement of the funds until July 1988, a month after he informed the court of the satisfaction and discharge. Moreover, Robert complied with the June 1985 judgment and the assignment when he placed $100,000 into escrow on behalf of the amounts due and owing to Spalding by Joan. Robert's representation to the domestic relations court that the June 1985 judgment had been satisfied and discharged was not a misrepresentation, as Robert not only believed that the judgment had been complied with, but had no idea that J.P. Celebrezze would disburse the funds to parties other than Spalding.

J.P. Celebrezze's third assignment of error is overruled.

V App. No. 65185

Robert's third assignment of error forms the basis for App. No. 65185. It reads as follows:

"The trial court erred in granting a *nunc pro tunc* order, awarding judgment in favor of Plaintiff Walter T. Spalding, Jr. and against Defendant–Appellant Robert Coulson in the sum of $71,000.00 plus interest from June 6, 1988."

Robert challenges the trial court's February 12, 1993 *nunc pro tunc* entry correcting the December 22, 1992 judgment. Specifically, he submits that the date chosen by the trial court as the date on which the statutory rate of ten percent per annum was to commence, June 6, 1988, is a date which holds no relationship to the facts of this case.[9]

 R.C. 1343.03(A) provides:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *."

In accordance with this provision, when the amount of a debt is not disputed, but the liability for the debt is, interest runs on the debt from the time it was due and payable. The trial court determines the due and payable date. *Braverman v. Spriggs* (1980), 68 Ohio App.2d 58, 22 O.O.3d 47, 426 N.E.2d 526; see, also, *Alside Supply Co. v. Wager* (1993), 89 Ohio App.3d 539, 625 N.E.2d 647.

 The present case involves an obligation on a written agreement, the amount of which is not in dispute. Therefore, Spalding is entitled to interest pursuant to R.C. 1343.03(A), from the time the debt was due and payable as determined by the trial court. The trial court adopted June 8, 1988 as the date upon which the judgment in this case was to accrue interest. This is the date when the domestic relations court signed a judgment entry which reflected that the July 19, 1985 judgment was satisfied as a result of the agreement between Joan and Robert entered on December 28, 1987. Robert was aware of the assignment on June 6, 1988, but nonetheless allowed the domestic relations court to issue the June 8, 1988 judgment without obtaining a release from Spalding as required in the agreement. The trial court's adoption of this date thus bears a relationship to the facts of this case, contrary to Robert's assertion.

Robert's third assignment of error is overruled.

## VI App. No. 66457

Robert's assignment of error in App. No. 66457 reads as follows:

---

9. Our ruling in this assignment of error does not confirm the $71,000 judgment, merely the dates of the commencement of statutory interest. See Robert's fourth assignment of error, above.

"The trial court erred in denying defendant-appellant Robert Coulson's Motion to Reduce to Judgment a One–Thousand Dollar payment made by Coulson to Plaintiff Walter T. Spalding, Jr. in connection with the Final Order of the Common Pleas Court, entered on December 22, 1992."

Robert made a payment of $1000 to Spalding on April 28, 1993. The payment was a partial payment on the $71,000 judgment entered on December 22, 1992 in an attempt to prevent Spalding from acting on his threat to commence collection proceedings. Robert then made a $1000 demand upon J.P. Celebrezze in accordance with the indemnification order, but J.P. Celebrezze failed to comply with the demand. Robert argues that since J.P. Celebrezze did not post a supersedeas bond until after the demand for indemnification, the trial court erred by not reducing the $1000 demand to judgment.

The trial court, in its judgment of December 22, 1992, ordered J.P. Celebrezze to indemnify Robert for any monies paid to Spalding pursuant to that judgment. If this indemnification order survived following our review of Robert's first assignment of error, we would see no need to sustain this assignment of error. Regardless of whether the $1000 demand was reduced to judgment, J.P. Celebrezze would remain liable to Robert for the payment. The trial court's refusal to reduce the demand to judgment would have been a discretionary function which we would decline to disturb in the absence of an abuse of discretion.

However, we previously determined that the trial court erred in ordering J.P. Celebrezze and Joan to indemnify Robert for any monies paid to Spalding. Moreover, in light of the remand of this action for a determination of damages, we sustain this assignment of error to allow the determination whether Robert is indeed entitled to recover this sum from J.P. Celebrezze.

In conclusion, in App. No. 64962, for proceedings to be consistent with this opinion, the indemnification order is vacated, and the cause is remanded to the trial court for a determination of damages as to defendant/appellant Robert and third-party defendant/appellant J.P. Celebrezze; Robert's claims for punitive damages and attorney fees is reinstated; and the judgment of the trial court is otherwise affirmed.

The ruling of the trial court at issue in App. No. 66457 is reversed and the cause is remanded for proceedings to be consistent with this opinion.

The judgment in App. No. 65185 is affirmed.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

NAHRA and WEAVER, JJ., concur.

Clark B. Weaver, J., retired, of the Eighth Appellate District, sitting by assignment.