Defendant Jim Ventura has appealed from a jury verdict in the Medina County Common Pleas Court that awarded plaintiff James Angus $1000 in damages on a breach of contract claim, $20,000 in damages on emotional distress and battery claims, and $5000 in punitive damages.[1] Defendant has argued that: (1) the $20,000 damages award for emotional distress and battery was against the manifest weight of the evidence; (2) the trial court and plaintiff incorrectly informed the jury of the limits of punitive damages that could be awarded, a violation of Section2315.21(F) of the Ohio Revised Code; (3) the $1000 damages award for breach of contract was against the manifest weight of the evidence; (4) plaintiff's misconduct aroused the jury's passion, denying defendant a fair trial; (5) the trial court incorrectly received evidence that his expert witness was a convicted felon; (6) the trial court was without jurisdiction to calculate plaintiff's attorney fees; and (7) the trial court incorrectly failed to allow accompanying audio to be played to the jury when a videotape of a house inspection by plaintiff's experts was shown.[2] This Court affirms the jury's verdict because: (1) the jury did not lose its way and create such a manifest miscarriage of justice, when it awarded $20,000 in damages on plaintiff's emotional distress and battery claims, that its findings must be reversed; (2) neither the trial court nor plaintiff informed the jury of the limits on punitive damages in violation of Section 2315.21 of the Ohio Revised Code; (3) defendant admitted that he still owed plaintiff $1000 on the contract; (4) defendant failed to object at trial to any of plaintiff's statements; (5) the trial court did not err by receiving evidence of defendant's expert witness's past conviction; (6) the trial court had authority to calculate attorney fees and had sufficient evidence before it to make that calculation; and (7) the trial court did not err by failing to allow the audio accompanying the videotape to be played.
 I.
Plaintiff is a contractor who does home improvement work. This lawsuit concerns a house defendant built in Hinckley, Ohio, during 1994. During February, April, and May of that year, defendant and plaintiff entered into three contracts for roofing and siding work at defendant's house. Plaintiff completed the work around October 11, 1994. Defendant had made down payments on the contracts and paid some of the balance while the work progressed. According to plaintiff, however, when the work was finished, defendant still owed $1000. Defendant admitted that he owed the money, but claimed that, due to defects in the work performed by plaintiff, he was not obligated to pay.
On October 12, 1994, plaintiff arrived at defendant's house to ask for the amount still owed. Plaintiff claimed that defendant grew angry and complained that several shingles on the roof were damaged. Plaintiff offered to fix them. Defendant then said that he would not pay the rest of the money owed.
Plaintiff turned to leave, but defendant followed him and threatened him. Plaintiff entered his truck. Defendant knocked on the window of the truck, and plaintiff rolled down the window. According to plaintiff, defendant then spit in his face. Plaintiff immediately reported the incident to police, but no charges were filed against defendant.
Plaintiff apparently grew depressed over the incident and visited a psychologist for treatment. According to that psychologist, plaintiff experienced significant anxiety and depression, lost his ability to concentrate, could not sleep, and, generally, exhibited signs of "labile affect." Plaintiff's condition improved quickly, however, and, after five sessions, he no longer needed to see the psychologist.
On February 17, 1997, plaintiff filed a complaint in the Medina County Common Pleas Court, seeking to recover the balance owed for the home improvement work, for defendant's act of spitting on him, and for defendant's act of threatening and menacing him. On March 20, 1995, defendant filed an answer and counterclaim in which he alleged that plaintiff had performed his part of the contract in an unsatisfactory manner.
Trial commenced on January 16, 1997. On January 21, 1997, the jury returned a verdict in favor of plaintiff and against defendant for $1000 on plaintiff's breach of contract claim. It also returned a verdict against defendant for $20,000 on plaintiff's emotional distress and battery claims. In addition, the jury awarded plaintiff $5000 in punitive damages. Finally, the jury found for plaintiff on defendant's counterclaim. After trial, the trial court awarded plaintiff $10,166 in attorney fees. Defendant timely appealed to this Court.
 II. A.
Defendant's first assignment of error is that the jury's award of $20,000 damages on plaintiff's emotional distress and battery claims was against the manifest weight of the evidence. He has argued that plaintiff suffered neither serious emotional distress nor bodily harm and that the jury's award was merely a "manifestation of passion and prejudice."
When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Lagasse v.Yaeger (Sept. 9, 1998), Lorain App. No. 97CA006774, unreported, at 3-4, citing Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175; see, also,State v. Otten (1986), 33 Ohio App.3d 339, 340.
Defendant has claimed that plaintiff suffered neither serious emotional distress nor bodily harm. For example, he has asserted that plaintiff continued to work after the alleged spitting incident, which, he has claimed, demonstrated that plaintiff was functioning normally. Plaintiff's damages, defendant has argued, were not $20,000.
A plaintiff states a claim for battery when he demonstrates that the defendant acted "intending to cause a harmful or offensive contact, and when a harmful [or offensive] contact results." Retterer v. Whirlpool Corp. (1996), 111 Ohio App.3d 847,854, quoting Love v. Port Clinton (1988), 37 Ohio St.3d 98,99. In this case, defendant's act of spitting on plaintiff's face constituted a battery, notwithstanding his argument that that act was merely a "simple assault." SeeLeichtman v. WLW Jacor Communications, Inc. (1994), 92 Ohio App.3d 232,235 (blowing cigar smoke in plaintiff's face constituted a battery). Plaintiff testified that defendant spit on him. A friend of both defendant and plaintiff testified that defendant called him the week after the incident allegedly occurred and bragged that he had, in fact, spit on plaintiff. The jury's finding that the spitting occurred was not against the manifest weight of the evidence. Its award of $10,000 for that battery was also not against the manifest weight of the evidence. In a battery action, "the wrong is said to be damages in and of itself." Stokes v. Meimaris (1996), 111 Ohio App.3d 176,187. This Court cannot conclude that $10,000 was an unreasonable amount for the jury to award in this case.
A plaintiff states a claim for the intentional infliction of serious emotional distress when he demonstrates that the defendant engaged "intentionally or recklessly in extreme or outrageous conduct causing the plaintiff to suffer serious emotional distress." Perkins v. Lavin (1994), 98 Ohio App.3d 378,383, quoting Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369,374; see, also, Rine v. Sabo (1996), 113 Ohio App.3d 109,118-119. Plaintiff testified that he was upset following the incident. His psychologist diagnosed him as suffering "significant anxiety and depression." Plaintiff suffered crying spells and severe mood swings and required psychological treatment. The jury could reasonably have found that defendant did spit on plaintiff and that the damages caused by that act, consisting not only of the psychologist's fee, but also of plaintiff's anxiety and depression, amounted to $10,000. Defendant failed to introduce evidence that overwhelmingly rebutted plaintiff's version of the incident or that demonstrated plaintiff's damages to be significantly less than the amount awarded. Consequently, the jury did not lose its way and create such a manifest miscarriage of justice that its verdict must be reversed.
Finally, defendant has challenged the trial court's instruction on emotional distress and battery. His argument, however, has addressed only the battery instruction, and he has claimed that "plaintiff's complaint [did] not allege facts constituting a battery." As noted above, however, defendant's act of spitting on plaintiff's face was a battery and the evidence warranted such an instruction. Defendant's first assignment of error is overruled.
 B.
Defendant's second assignment of error is that the trial court and plaintiff incorrectly informed the jury of the monetary limits of punitive damages that may be awarded in a tort action, a violation of Section 2315.21(F) of the Ohio Revised Code. Section 2315.21(D)(1) of the Ohio Revised Code provides:
 In a tort action, the trier of fact shall determine the liability of a defendant for punitive or exemplary damages and the amount of those damages to be awarded.
 (a) Except as otherwise provided in division (D)(3)(b) of this section, the court shall not enter judgment for punitive or exemplary damages in excess of the lesser of three times the amount of the compensatory damages awarded to the plaintiff from that defendant or one hundred thousand dollars, as determined pursuant to division (B)(2) or (3) of this section.
Section 2315.21(F) provides that, in cases tried to a jury, the trial court shall not instruct the jury "with respect to the limits on punitive or exemplary damages pursuant to division (D) of this section," and counsel shall not inform the jury "of those limits." Subdivision (F) was not effective until six days after the jury returned its verdict in this case. Accordingly, defendant's second assignment of error is overruled.
Even if Section 2315.21(F) had been effective at the time this case was tried, neither plaintiff's closing argument nor the trial court's jury instructions would have violated that provision. Both plaintiff and the trial court merely told the jury that it could award punitive damages only up to the amount that plaintiff had requested in his complaint. No one told the jury the maximum amount of punitive damages that Section2315.21(D) allows.
Defendant has also argued that no evidence of his income was before the jury from which it could consider his ability to pay punitive damages, as required by Section 2315.21(D)(1)(c) of the Ohio Revised Code. Like subdivision (F) of Section 2315.21, however, subdivision (D)(1)(c) of that statute was not effective until after the trial in this case.
Before the effective date of Section 2315.21(D)(1)(c), although evidence of defendant's net worth would have been relevant to a determination of punitive damages, the trier of fact was not required to consider such evidence. Wagner v.McDaniels (1984), 9 Ohio St.3d 184, paragraph two of the syllabus; see, also, Tschantz v. Ferguson (1994), 97 Ohio App.3d 693,715-716; Doe v. White (1994), 97 Ohio App.3d 585,594. Consequently, a jury's failure to consider evidence of a defendant's net worth before awarding punitive damages was not grounds for reversal. Id. Other factors are also relevant when determining the amount of punitive damages to award, including the nature of the conduct that resulted in the injury, the amount necessary to deter future similar conduct, prior or similar acts of defendant, and the amount of compensatory damages awarded. Wightman v. Consolidated Rail Corp. (1994),94 Ohio App.3d 389, 408. Given the testimony that defendant spit on plaintiff and had apparently bragged about it to a friend, as well as the compensatory damages award of $20,000 on the battery and emotional distress claims, the jury's award of $5000 in punitive damages was not improper. Testimony was presented that defendant worked as a railroad conductor, which was essentially the position of a foreman. Although no amount was presented concerning his actual income, the jury at least knew that he was employed. A $5000 punitive damages award based on the evidence before the jury was not improper. Defendant's second assignment of error is overruled.
 C.
Defendant's third assignment of error is that the jury's award of $1000 on plaintiff's breach of contract claim was against the manifest weight of the evidence. During trial, both defendant and his wife admitted that $1000 was still owed on the contract. Defendant's position was that, because plaintiff had not completed the work in a satisfactory manner, he was not obligated to make the final payment.
The jury believed, contrary to defendant's assertions, that plaintiff had satisfactorily completed the work. Representatives from the company that supplied the vinyl siding for the house and a professional roofer testified that, although a few problems existed in some areas of the house, those problems were minor, easily corrected, and did not affect the finished product, which was satisfactory. Defendant's expert gave the opposite opinion.
Essentially, this case presented the jury with a choice between expert opinions. No one opinion was so persuasive, however, as to render the others unworthy of belief. The jury apparently believed plaintiff's experts. In doing so, it did not lose its way and create a manifest miscarriage of justice, and its verdict that plaintiff had not breached his part of the contract was not, therefore, against the manifest weight of the evidence. Defendant was obligated on his part of the contract and was required to pay the $1000 that he admitted was still owed. See Lake Ridge Academy v. Carney (1993), 66 Ohio St.3d 376,378-379 ("If time is not of the essence and the obligor has substantially complied with the terms of the contract, the obligee's duty to perform is not discharged"); ClevelandNeighborhood Health Serv., Inc. v. St. Clair Builders, Inc.
(1989), 64 Ohio App.3d 639, 644. Defendant's third assignment of error is overruled.
 D.
Defendant's fourth assignment of error is that plaintiff's misconduct aroused the jury's passion, denying him a fair trial. He has pointed to many statements made by plaintiff's counsel during trial that he claims improperly turned the jury against him. Defendant failed to object to any of those statements during trial and has, therefore, waived his challenge to those statements. See State v. Peagler (1996),76 Ohio St.3d 496, 499. Defendant's fourth assignment of error is overruled.
 E.
Defendant's fifth assignment of error is that the trial court incorrectly received evidence that his expert witness was a convicted felon. He has also argued that the trial court incorrectly received evidence that he, too, was a convicted felon. Defendant failed to object to the evidence of his prior conviction, however, and, therefore, is foreclosed from arguing on appeal that it should not have been received. Subject to certain restrictions, Rule 609 of the Ohio Rules of Evidence permits the introduction of evidence of a conviction to attack the credibility of a witness. The conviction of defendant's expert apparently occurred during 1996, well within the ten-year time limit of Rule 609(B). The trial court did not err by receiving evidence of that conviction. Defendant's fifth assignment of error is overruled.
 F.
Defendant's sixth assignment of error is that the trial court incorrectly calculated plaintiff's attorney fees. He has argued that the trial court improperly relied upon a contingent fee agreement entered into between plaintiff and his counsel. Defendant has argued that that agreement was improperly executed because plaintiff's counsel did not sign it, as required by Section 4705.15 of the Ohio Revised Code, and that, therefore, the trial court lacked subject matter jurisdiction to render a judgment, based on that agreement, on the amount of attorney fees to award.
Defendant has not challenged the finding of the jury that attorney fees be awarded; rather, he has claimed that the trial court had no basis from which it could award attorney fees. Section 4705.15 of the Ohio Revised Code requires contingent fee agreements to be in "writing and signed by the attorney and the client." The only copy of the contingent fee agreement between plaintiff and his counsel in the record in this case is signed by plaintiff but not by his lawyer.
Defendant has not pointed to any authority that prohibits a trial court from awarding attorney fees based on a contingent fee agreement that does not comply with Section 4705.15. The work was performed by plaintiff's counsel. The fee of $10,166 included one-third of the recovery on plaintiff's action, as well as $1500 for work defending the counterclaim. Those figures were specified in the contingent fee agreement. Even if that agreement violated the explicit terms of Section 4705.15
of the Ohio Revised Code, the trial court could have used that agreement to calculate reasonable attorney fees. As such, because the terms of the contingent fee agreement provided an easy method to calculate the fee, the trial court did not err by performing the calculations itself and, in so doing, determining the amount of attorney fees to award plaintiff without a hearing.
Defendant has relied on International Lottery, Inc. v.Kerouac (1995), 102 Ohio App.3d 660, 667-671, to argue that attorney fees may be awarded only if they are authorized by statute and that, because plaintiff's contingent fee agreement violated Section 4705.15 of the Ohio Revised Code, no statutory authorization existed for an award of attorney fees. Defendant's argument lacks merit. The trial court did not rely on Section 4705.15 as authority to award attorney fees. An aggrieved party may recover reasonable attorney fees when an award of punitive damages is proper. Spalding v. Coulson
(1995), 104 Ohio App.3d 62, 78, citing Hutchinson v. J.C.Penney Cas. Ins. Co. (1985), 17 Ohio St.3d 195, 200. Plaintiff was entitled to attorney fees. The trial court did not err by using the contingent fee agreement to calculate the award. Defendant's sixth assignment of error is overruled.
 G.
Defendant's seventh assignment of error is that the trial court incorrectly refused to allow the audio accompanying the videotape of the house inspection by plaintiff's experts to be played to the jury. He has argued that, by doing so, the trial court deprived him of "critical voice evidence," thereby rendering the videotape useless.
During trial, the trial court allowed the jury to view the video, but not hear the accompanying audio, of a house inspection conducted by plaintiff's expert witnesses. Defendant did not object to the trial court's refusal to play the audio along with the video and, therefore, waived his right to make this argument on appeal. Furthermore, although the testimony of defendant's wife was not transcribed, it appears that defendant's counsel asked her questions and she described the scenes on the videotape.
A trial court enjoys broad discretion in admitting evidence.State v. Thompson (1993), 87 Ohio App.3d 570, 578. The trial court did not provide any reasons for its decision not to admit the audio to be played with the video, but such lack of explanation would not, in and of itself, constitute an abuse of discretion. During trial, defendant, his wife, and all of the experts testified to the alleged defects in the house found when they inspected it. The trial court could have reasonably concluded that the audio accompanying the videotape would have been unnecessary cumulative evidence that would have merely repeated witness testimony concerning the alleged defects. Even if defendant had not waived this argument, therefore, this Court would conclude that the trial court did not err by excluding the audio accompanying the videotape. Defendant's seventh assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Medina, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellants.
Exceptions.
 --------------------- CLAIR E. DICKINSON FOR THE COURT
SLABY, P. J., CARR, J., CONCUR
[1] Defendant's wife, Linda Ventura, was a party defendant to plaintiff's breach of contract claim and has appealed that part of the jury's verdict.
[2] Plaintiff's assignments of error have been consolidated for ease of discussion.