JOURNAL ENTRY AND OPINION
{¶ 1} These consolidated appeals and cross-appeal arose following a bench trial before Judge Lillian J. Greene and resulted from appellee/cross-appellant DGE, Ltd., Inc.'s ("DGE") claim that appellants/cross-appellees Stewart Title and Guaranty Company ("Stewart") and Surety Title Agency ("Surety") had a duty to defend it against Eller Media Company's ("Eller") suit alleging property rights to a billboard on its building. Among other claims, Stewart contends it was error to find it had a duty to defend DGE and to award it attorney fees and costs, and it should have been granted summary judgment against appellee Pauline DiGeronimo, the building's prior owner. Surety contends, among other errors, that the judge erred in finding a breach of fiduciary duty, a breach of contract, that an exception in the title policy was inapplicable, and in granting summary judgment motions in favor of the DiGeronimos and DGE. DGE's cross-appeal claims error in denying both its motion for leave to amend its third-party complaint and its motion to compel the production of documents. We affirm in part, reverse in part and remand
 {¶ 2} From the record we glean the following: In late 1997, Diane Daniels, DGE's representative, met with Kevin Cooney, realtor for the DiGeronimos, to tour a five-story building at 2800 Superior Avenue in Cleveland When she noticed a large billboard attached to the building, he explained that it was currently on a month- to month-lease and could be a potential moneymaker, and even offered to help her rent it. There was no further discussion over the use or ownership of the billboard.
 {¶ 3} On December 29, 1997, DGE and Pauline Digeronimo entered into a purchase agreement and Attorney William Boyd was retained to represent DGE in the transaction. Surety was selected as the title and escrow agent, and Stewart to be the underwriter for the owner's policy of title insurance. On January 6, 1998, Surety delivered a title policy commitment that provided two exceptions from coverage: the rights of parties in possession not shown by public records, and for encroachments, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey or inspection of the premises.
 {¶ 4} To satisfy this "survey exception," Boyd hired Neff 
Associates to survey the five-parcel property. It was completed at the end of January 1998, and sent to Boyd for review prior to closing. The survey revealed various fixtures, improvements, easements, canopies, and a billboard located on Parcel 1.
 {¶ 5} After reviewing the survey, Boyd sent a closing letter to Surety's counsel, Doug Currie, on February 3, 1998, advising in relevant part:
"For purposes of your title policy, the purchaser is preparedto accept that policy subject to the following Schedule B items:3(a) revised to reflect that the first half of 1997 taxes havebeen paid, 3(b) revised to reflect that the first half of 1997taxes have been paid, 3(d), 3(e), 3(f), 3(g), 3(h), 3(i), 3(j),3(n), 3(o), 3(p), 3(r), 3(s), the ownership rights of Ernest L.Rolls as to parcel 3 of such Commitment, the ownership rights ofthe City of Cleveland as to Parcel 4 and Parcel 5 of suchcommitment, the matters set forth on that certain survey of Neff Associates (Daniel J. Neff, Jr.) dated January 1998 as DrawingNo. 11416-al, Job No. 11416."
 {¶ 6} Neff Associates had also provided Surety with a copy of the survey, and Surety obtained an affidavit from Pauline DiGeronimo attesting that there were no unrecorded adverse interests with respect to the property. Her affidavit stated in relevant portion:
"No person other than affiant is in possession of or has aright of possession of the Property except the following specifictenants . . . NONE.
. . .
There are no unrecorded easements or rights of way for usersor adverse interest with respect to the Property."
 {¶ 7} Shortly after the property transferred, Daniels asked Cooney for information on the current billboard tenant and learned it was Eller. When Daniels advised Eller that it could no longer rent the billboard, Eller claimed it owned the billboard and its use by virtue of a 1994 unrecorded three-year "Real Estate Lease" between the DiGeronimos and Eller's predecessor, Patrick Media. The DiGeronimos explained that, although they accepted checks from Eller for the billboard's use through 1997, the agreement ended in 1995 when they sent a termination letter to Patrick Media. Eller, however, advised that under the lease agreement, it had the right to continue renting the billboard for the next year. Daniels refused to accept this arrangement, removed Eller's advertising, and replaced it with a Daniels' Furniture sign.
 {¶ 8} On February 16, 1998, Boyd wrote to Currie advising him of Eller's claim to the billboard, and that such claimed interest was not a "Permitted Encumbrance" as defined by Section 29(d) of the Purchase Agreement. He also requested the owner's title policy, which he had not received, and advised Currie that his letter should be considered notification of a claim covered by the policy. Currie then forwarded the claim letter to William Zabkar, state counsel for Stewart.
 {¶ 9} On April 22, 1998, Surety provided the title policy to DGE that provided an exception in Schedule B, for "rights of others, if any, in and to the billboard." On April 28, 1998, Eller, asserting its rights to the billboard, filed a complaint for declaratory judgment, preliminary injunction, equitable relief, and money damages against DGE and Mr. and Mrs. DiGeronimo. DGE denied liability and cross-claimed against the DiGeronimos.
 {¶ 10} Zabkar wrote[1] to Boyd stating that he had completed his investigation of the title claim, and that Stewart was denying coverage and refused to defend or indemnify DGE in any action filed by Eller. He referred to Boyd's February 3rd
letter accepting the policy subject to "matters set forth on that certain survey of Neff Associates," and explained that the billboard was shown on that survey and was exempt from coverage.
 {¶ 11} DGE filed a third-party complaint against Surety and Stewart for breach of contract and indemnification. Stewart and Surety both answered the third-party complaint, with Stewart asserting a claim against Mrs. DiGeronimo based upon her statements in the indemnity affidavit.
 {¶ 12} Stewart claimed three defenses: First, that exclusion 3(b) on the face of its policy precluded coverage for adverse claims or interests not known to Stewart and not shown by the public records, but known to the insured. Second, that exclusion 3(c) on the face of the policy precluded coverage for adverse claims resulting in no loss and damage, and DGE had not sustained any monetary losses. Finally, that the policy contained an exception in Schedule B, Section 1(q) for:
"The following matters as shown on the survey by Thomas Neff,Jr., dated January 26, 1998, drawing name 11416-a1, Job No.44146:
 . . . Rights of others, if any, in and to the "billboard" onParcel No. 1"
 {¶ 13} Stewart moved for summary judgment, which was denied, because the judge held that there was a question about whether DGE had the requisite knowledge of Eller's billboard claim to satisfy the title policy's exclusion. Stewart again moved for summary judgment, claiming that Eller's lease on the billboard was really a license and that any rights thereunder automatically extinguished upon transfer. The motion was also denied.
 {¶ 14} Later, DGE moved for partial summary judgment claiming that neither Daniels' nor its knowledge of an adverse interest in the billboard was the type or degree of knowledge necessary for an exclusion under 3(b). The judge agreed and granted its motion.
 {¶ 15} The judge ruled that the agreement between Eller and the DiGeronimos gave Eller a lease, but under which it had no right to possession. Stewart's motion to reconsider was denied.
 {¶ 16} Mrs. DiGeronimo moved for summary judgment on Stewart's claims against her, which was granted.
 {¶ 17} All claims and parties were dismissed with the exception of DGE's breach of contract and indemnity claims against Stewart and Surety. Following a bench trial, DGE was awarded: $79,668 in attorney fees, $14,162 in costs, and an additional $21,034.90 in fees against both Stewart and Surety. These appeals followed on the assignments and cross-assignments of error set forth in the appendix to this opinion.
I. Stewart's and surety's obligation to defend and indemnify.
 {¶ 18} Stewart's four contentions are: It was error to find that DGE was entitled to coverage despite specific exclusions in Stewart's policy; it was error to find that the "billboard exclusion" did not preclude coverage; partial summary judgment to DGE was inappropriate because it had knowledge of Eller's adverse claim; and it was error to find that Eller's agreement with the DiGeronimos was a lease while simultaneously finding no possessory interest thereunder.
 {¶ 19} Surety asserts in two assignments of error that because it was not a party to the title policy it had no obligation to ensure, indemnify or defend DGE and, even if so contractually obligated, DGE's claims were excluded from coverage under the policy exclusions.
A. PARTIAL SUMMARY JUDGMENT
 {¶ 20} Stewart claims that, under its exclusion 3(b), DGE had sufficient knowledge of any adverse interest in the billboard and the judge erred in awarding partial summary judgment to DGE.
 {¶ 21} Under Civ.R. 56, summary judgment shall be entered in favor of a moving party if: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[2] In her March 2000 order, the judge stated:
"DGE's knowledge of a month-to-month tenancy does not fallwithin the meaning of "other matters," pursuant to this court'sinterpretation of the statutory exclusions. All matters listed inpara. 3 of Exclusions demonstrate conditions of the title to theproperty which might inhibit clear title from being transferred.This is not the case with the month-to-month tenancy."
 {¶ 22} Stewart asserts that "open possession is sufficient to charge a purchaser with knowledge of all legal or equitable claims of the occupier which could have been ascertained from reasonable inquiry."[3] However, Stewart's policy defines the requisite knowledge as:
"© `knowledge': actual knowledge, not constructive knowledgeor notice which may be imputed to an insured by reason of anypublic records."
 {¶ 23} Insurance contracts are strictly construed against the drafter,[4] and neither Stewart nor Surety provided evidence that DGE had actual knowledge of anything other than a billboard user's month-to-month tenancy. Although Stewart attempts to impute knowledge to DGE based on visual observation, this argument is unpersuasive and, arguably, could be applied against it. Whether Eller's name was on the billboard at the time Daniels toured the property, or Cooney's statement that the billboard was on a month-to-month lease are each and both insufficient to charge DGE with actual knowledge of Eller's purported adverse interest. This portion of Stewart's first assignment of error lacks merit.
B. TITLE INSURANCE POLICY/CONTRACT INTERPRETATION
 {¶ 24} Both Surety and Stewart assert that under the policy, coverage is expressly limited by the exceptions contained in Schedule B, specifically, exclusion 1(q), the billboard exclusion, that precludes any obligation to defend or indemnify DGE.
 {¶ 25} In her order, the judge noted that:
"It was only after Mr. Currie had actual knowledge of theEller Media claim to the billboard that he drafted and added thislanguage purporting to exclude the billboard from coverage. The`exception' was clearly unilaterally inserted into the policy toavoid Surety and Stewart's contractual and fiduciary duties tothe insured purchaser."[5]
 {¶ 26} Stewart asserts that "title policies such as the one at issue here must be construed in accordance with the same rules as other written contracts."[6] It contends that a judge is precluded from rewriting a contract when the intent of the parties is clear, and may not resort to construction of the language if the policy's provisions are clear and unambiguous.[7] Its policy provisions, however, are not so clear and unambiguous as to exempt them from interpretation by the judge.
 {¶ 27} In Boyd's letter to Surety, he accepted "the matters set forth on that certain survey of Neff Associates." Although it is clear from the survey that a billboard is affixed to the building, other structures are also present on the structure, most obviously a canopy, yet Stewart and Surety make no later provision for this structure, although by the logic that each asserts on appeal, a canopy exception should have been added as well.
 {¶ 28} Boyd notified Surety of Eller's claim in his February 16, 1998, letter and, when Currie learned of the claim and impending lawsuit, he wrote the "billboard exception" into the title policy. As noted by the judge, the survey contained no identification or notations about the billboard or any rights of parties to it, just as the canopy was drawn. This explicit exception was unilaterally inserted to avoid contractual obligations to DGE.
 {¶ 29} It is a well settled principle that an insurance company has a duty to defend an insured against an action if the complaint alleges conduct which falls within the scope of the applicable policy.[8] When there is an action against an insured, and the action raises claims that come within the title insurance policy's coverage, the insurer must defend the action.[9] Further, this duty to defend exists even though the underlying action may eventually produce a result which, in fact, does not trigger a duty to indemnify under the policy.[10]
 {¶ 30} During oral argument, both counsel for Stewart and Surety responded that, even if the "billboard exception" was absent from the policy, no defense would have been tendered for DGE because Eller's claims were not cognizable under the policy. However, all that is necessary when determining whether an insurer must defend is that the allegations in the complaint at least arguably come within the policy's coverage.[11] As the Ohio Supreme Court held in City of Willoughby Hills v.Cincinnati Insurance Co.,[12]
 "Where the insurer's duty to defend is not apparent from thepleadings in the action against the insured, but the allegationsdo state a claim which is potentially or arguably within thepolicy coverage, or there is some doubt as to whether a theory ofrecovery within the policy coverage has been pleaded, the insurermust accept the defense of the claim."
 {¶ 31} We find that this portion of Stewart's first assignment of error and Surety's fourth assignment of error lack merit.
C. LEASE VS. LICENSE
 {¶ 32} Stewart challenges the finding that Eller's interest in the property was a lease, although without any possessory rights, and contends that such interest is actually a license. It maintains that Eller's license terminated upon transfer, which therefore excluded DGE from coverage under exclusion 3© to the policy. In its ninth assignment of error, Surety claims that, although it was not a party to the policy and had no duty to ensure, indemnify, or defend DGE, if such a duty were found, exclusion 3© would apply to preclude coverage.
 {¶ 33} Stewart appeals the denial of its respective motion for summary judgment and renewed motion for summary judgment containing these contentions, and we review the denial of those motions de novo.[13] Summary judgment is only appropriate when there are no genuine issues of material fact,[14]
however, it is clear from the record that there remains a question of fact as to Eller's interest.
 {¶ 34} In ruling on the motions, the judge made the following finding:
"The clear, unambiguous language of its contract with theDiGeronimos is that of a Real Estate Lease. It is not necessarythat the lease be recorded in order to be a valid real estatelease. Contrary to the position set forth by Eller, its Leasedoes not run with the land nor grant it an enforceable interestin the property as it is merely a lease. Furthermore, Paragraph 6of the Lease states, `[t]his agreement is a lease (not alicense.).'"
 {¶ 35} Throughout the course of litigation and in the numerous briefs filed by all parties, there has been continuous confusion over Eller's specific interest in/to the billboard, and if the "lease" was actually a "license." A lease by definition creates a possessory interest, or right of possession, in real estate,[15] yet the judge found the interest to be a lease without any possessory interest.
 {¶ 36} Because of this question over a material fact, it is not appropriate to make factual determinations in the course of a summary judgment determination. This portion of Stewart's first assignment of error and Surety's ninth assignment of error has merit.
II. PAULINE DIGERONIMO'S MOTION FOR SUMMARY JUDGMENT
 {¶ 37} Stewart next contends that the judge erred in granting summary judgment for and finding no cause of action against Ms. DiGeronimo which precluded evidence supporting its claim against her. Surety likewise claims in its seventh assignment of error that awarding summary judgment was inappropriate because genuine issues of material fact were in dispute. We agree.
 {¶ 38} Pauline DiGeronimo executed an affidavit attesting that there were no unrecorded adverse interests with respect to the property. It stated in relevant part:
"No person other than affiant is in possession of or has aright of possession of the Property except the following specifictenants . . . NONE.
. . .
There are no unrecorded easements or rights of way for usersor adverse interest with respect to the Property."
It further stated,
"This AFFIDAVIT is made for the purposes of inducing SURETYTITLE AGENCY, INC., as agent for STEWART TITLE GUARANTY COMPANYto issue a title insurance policy or other title evidence, and ifacting as escrow or closing agent, then to disburse any fundsheld as escrow or closing agent. Affiant hereby indemnifies andagrees to save harmless SURETY TITLE AGENCY, INC., and STEWARTTITLE GUARANTY COMPANY against any damages or expense, includingattorneys fees, sustained as a result of any of the foregoingmatters not being true and accurate."
 {¶ 39} When Ms. DiGeronimo moved for summary judgment, she asserted that the facts contained in the affidavit were true. She contended that her statement "no one had a possessory interest in the property" was accurate because the judge had previously found that Eller's interest in the property was a month-to-month lease without any possessory interest. The judge granted her motion without opinion.
 {¶ 40} The record contains several factual inconsistencies which make the disposition of any claims against her on summary judgment inappropriate. The affidavit does not define the term "possession," nor does the order granting summary judgment and, therefore, a question of fact remains as to the understanding of the term and Ms. DiGeronimo's knowledge of any lease in this context.
 {¶ 41} Her assertion that summary judgment was appropriate because all claims against her were fully dependent on the finding that Eller had a possessory interest in the billboard and no such interest was found, is inaccurate. If Eller did have a lease and, therefore, a possessory interest in the property, Ms. DiGeronimo's affidavit statement regarding no knowledge of a possessory interest is misleading.
 {¶ 42} As one court has said, "title insurance companies are only liable for what they do not find, or if they become victims of false affidavits tendered to remove title objections."[16] As there are genuine issues of material fact concerning Ms. DiGeronimo's knowledge which are not fully resolved upon a finding that Eller's interest was merely non-possessory, the grant of summary judgment was improper. Stewart's second assignment of error and Surety's seventh assignment of error have merit.
I. BREACH BY SURETY
 {¶ 43} Surety claims it had not "breached its contractual obligations to DGE as title agent for Stewart," nor had it "breached the contract to insure DGE against loss." Similarly, in its eighth and ninth assignments of error, it claims it was not a party to the title policy, thereby relieving it of any contractual obligations. It also claims, in its first assignment of error, that the judge erred in finding a breach of fiduciary duties as escrow agent. We address these assignments together.
 {¶ 44} Surety's role in this transaction was twofold: it was to serve as escrow agent for the DGE/DiGeronimo transaction, and act as a title agent for Stewart. It contends that it had a contractual obligation to DGE as escrow agent, but not as a title agent. Under the terms of the Title Insurance Underwriting Agreement between Stewart and Surety, Surety was Stewart's agent and, because DGE was not a party to this agreement, it cannot claim rights under that agreement.
 {¶ 45} The Ohio Supreme Court has described an escrow by stating,
"an escrow in Ohio, as between grantor and grantee of real estate, is witnessed by a written instrument known as an escrow agreement, delivered by mutual consent of both parties to a third party denominated the depositary or escrow agent, in which instrument certain conditions are imposed by both grantor and grantee, which conditions the depositary or escrow agent, by the acceptance and retention of the escrow agreement, agrees to observe and obey."[17]
 {¶ 46} An escrow agent, therefore, must "carry out the terms of the agreement as intended by the parties,"[18] and release the documents and funds when the conditions of the agreement are met.[19] The evidence supports the contention that Surety, as escrow agent, fulfilled its contractual obligations to DGE.
 {¶ 47} As the title agent for Stewart, Surety contends that all its contractual duties were owed to Stewart alone and, that absent the required element of privity, DGE cannot attempt to assert breach of contract claims against it as a title agent. We agree.
 {¶ 48} Generally, there must be privity of contract between parties in order to recover damages under a contract or negligence theory.[20] An "action for breach of contract by a third party can be brought only where the parties to a contract intended to benefit the third party."[21]
 {¶ 49} Surety acted as an agent for Stewart with respect to the issuance of a title commitment and owner's policy of title insurance. An agent for a disclosed principal, acting within the scope of his authority and in the name of the principal, may not ordinarily be held individually liable.[22] As an agent for Stewart, Surety had no obligation to ensure DGE against loss, or defend or indemnify it.
 {¶ 50} Further, as to Surety's alleged breach of fiduciary duties, we find error in this determination for two reasons: first, the judge failed to rule on DGE's motion to amend to add a breach of fiduciary duty, yet nonetheless found such a cause of action in her December 21, 2001 journal entry; and second, she failed to recognize that upon Surety's completion of its duties as escrow agent, any alleged fiduciary duty also terminated.
 {¶ 51} Prior to the commencement of trial, DGE made an oral motion to amend its third-party complaint to add a claim for breach of fiduciary duty but, contrary to DGE's assertion that its motion was explicitly granted, the judge did not rule on this motion. She only decided the motion to amend to add bad faith claims against Stewart and Surety.
 {¶ 52} When a judge fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it.[23]
In the instant case, she denied DGE's motion to amend as untimely and, absent any indication that she intended to grant this same motion to amend on the fiduciary duty claims, we find that her silence constituted a denial. However, in spite of this presumed denial, the judge, sua sponte, found liability based on a breach of the fiduciary duty, and we review whether the evidence supported a finding.
 {¶ 53} To succeed on a claim of breach of a fiduciary duty, DGE must prove the existence of a duty arising out of a fiduciary relationship, failure to observe that duty, and injury resulting proximately therefrom.[24] No fiduciary duty is owed absent the showing of a fiduciary relationship, out of which the duties arise.[25]
 {¶ 54} A fiduciary relationship is defined as one in which "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence acquired by virtue of this special trust."[26] This type of relationship can be created either by a formal agreement or may arise de facto from an informal relationship if both parties understand that a special trust or confidence has been reposed.[27] It cannot, therefore, be unilateral.[28]
 {¶ 55} Surety was acting as the escrow agent for DGE and Pauline DiGeronimo with a disclosed relationship with Stewart. The main function of an escrow agent is to hold documents and funds until the conditions are met, whereupon the escrow agent releases the documents and funds.[29] When Surety fulfilled the escrow instructions and the property transferred, its duties and responsibilities ceased.[30]
 {¶ 56} While acting as Stewart's agent, Surety inserted specialized language into the policy, which DGE had not yet received or reviewed, denying all claims arising out of the billboard. These actions, however, did not alter its position as Stewart's agent, or resurrect its fiduciary duty as escrow agent. To find otherwise is error.
 {¶ 57} Because Surety was acting at all times as the disclosed agent of Stewart, and had completed its duties as escrow agent, there could be no breach of duty, either contractually or as a fiduciary, to DGE. Surety's first, second, and third assignments of error have merit.
I. AWARD OF ATTORNEY'S FEES
 {¶ 58} Both Stewart and Surety appeal the award of attorney fees, claiming either no evidence or insufficient evidence to support such an award. We review a determination of an award of attorney fees under an abuse of discretion standard.[31]
 {¶ 59} On July 28, 1999, the trial judge entered judgment in favor of DGE and against Eller on all claims. DGE, however, continued to pursue its claims against Stewart and Surety up to and including trial. In the first of two judgment entries, DGE was awarded $79,668 in attorney fees and $14,162 in costs through May 31, 2001.[32] In July 2003, and after receiving DGE's subsequent application for fees and costs for amounts incurred from June 1, 2001 through January 14, 2002, the judge then awarded DGE an additional $21,034.90,[33] although neither journal entry apportioned liability. As the award of fees relates to it, Stewart first asserts that under the express terms of the policy, it was never obligated to defend or indemnify DGE against the claims asserted by Eller, and cites to paragraphs three and twelve of the policy, which state in relevant part:
"3. DEFENSE AND PROSECUTION OF ACTIONS-NOTICE OF CLAIM TO BEGIVEN BY AN INSURED CLAIMANT
 (a) The Company, at its own cost and without undue delay,shall provide for the defense of an insured in all litigationconsisting of actions or proceedings commenced against suchinsured, or a defense interposed against an insured in an actionto enforce a contract for sale of its estate or interest in saidland, to the extent that such litigation is founded upon analleged defect, lien, encumbrance, or other matter insuredagainst by this policy.
 12. LIABILITY LIMITED TO THE POLICY This instrument together with all endorsements and otherinstruments, if any, attached hereto by the Company is the entirepolicy and contract between the insured and the Company.
 Any claim of loss or damage, whether or not based onnegligence, and which arises out of the status of the title tothe estate or interest covered hereby or any action assertingsuch claim, shall be restricted to the provisions and conditionsand stipulations of the policy. . . ."
 {¶ 60} Stewart argues that the language of this policy does not obligate it to compensate DGE for fees incurred as a result of pursuing its insurer and, that when these paragraphs are read in concert, any supposed obligation would be limited to the fees and costs expended only for the defense of Eller's claims.
 {¶ 61} Although denying any obligation to defend, Stewart claims that, even if it breached its contract and failed to defend DGE against Eller's claims, the proper measure of damages under the Title Policy would be limited to those attorney fees incurred by DGE in defense of Eller's claims, which were resolved in July of 1999.
 {¶ 62} DGE, however, cites Abt v. St. Paul Fire and MarineIns. Co.,[34] to support its contention that, in an action for breach of contract for failure to comply with the duty to defend, an insured is entitled to recover fees incurred in the underlying matter as well as in pursuit of coverage from the insurer. The Abt court held that:
"St. Paul's decision not to defend unnecessarily caused itsinsured, Mor-Flo, to expend money for attorney fees and costs ofdefense in the underlying patent action and Mr. Abt to expendfunds to prosecute this declaratory judgment action. `Where aninsurance company, under a policy of liability insurance,unjustifiedly refuses to defend an action brought against theinsured, and the insured subsequently brings a declaratoryjudgment action against the insurer to determine its obligationto defend, the insurer is responsible for the attorney feesincurred by the insured, both in the action which the insurerfailed to defend and in the declaratory judgment action.'Therefore, St. Paul is liable for reasonable and proper attorneyfees and costs which Mor-Flo spent in the defense of theunderlying patent infringement action and which Mr. Abt spent inthe instant declaratory judgment action."[35]
 {¶ 63} Moreover, in Allen v. Standard Oil Co.,[36]
the Supreme Court of Ohio addressed a similar issue when confronting a party's refusal to defend under an indemnity provision of a contract. In Allen, Refiners Transport 
Terminal Corporation ("Refiners") entered into a contract with Standard Oil, ("Sohio") where it agreed to indemnify, save harmless and defend Sohio in a number of situations, excepting the negligence of Sohio or third persons as the proximate cause of the accident. Refiners claimed that the indemnity language of the contract was ambiguous and it did not have a duty to indemnify. The Supreme Court, however, rejected this interpretation, found the language unambiguous and found that Refiners' failure to defend should not require Sohio to incur expenses that it could not recover. The Allen court held:
"When an indemnitor wrongfully refuses to defend an actionagainst an indemnitee, the indemnitor is liable for the costs,including attorney fees and expenses, incurred by the indemniteein defending the initial action and in vindicating its right toindemnity in a third party action brought against theindemnitor."[37]
 {¶ 64} As in both Abt and Allen, supra, absent the original denial of coverage and refusal to defend, DGE would not have incurred attorney fees or costs associated with this action. It is clear that the judge's award of attorney fees encompassed fees and costs associated with both DGE's defense against Eller's claim and its claims against Stewart and Surety. It is unclear, however, if a factual determination of both the reasonableness of the fees awarded and a division of responsibility between Stewart and Surety was ever made.
 {¶ 65} In her journal entry awarding attorney fees and costs to DGE, the judge justified the award by stating, "the attorney's fees charged by counsel for DGE were reasonable and necessary,"[38] but as this court has previously held, the trial judge must make a factual determination with regard to the reasonableness of the fees charged.[39] To determine reasonableness, the judge may look to the guidelines set forth in DR 2-106(B), and the ultimate determination of reasonableness must take into consideration all the factors relating to reasonableness of the fees in a particular case.[40]
 {¶ 66} In spite of the complicated nature of the issues and the alleged severity of the violations, neither journal entry provides any further justification for the award, and apparently finds Stewart and Surety jointly liable.
 {¶ 67} Therefore, the award of attorney fees was in error for two reasons: First, there is no indication in the record that the judge considered any of the factors under DR 2-106(B) prior to the issuance of the journal entries. More importantly, as we have determined that Surety neither breached its contractual duties nor fiduciary duties as escrow agent to DGE, any award of attorney fees against Surety is inappropriate.
 {¶ 68} We find Stewart's third and Surety's fifth and sixth assignments of error to have merit.
I. MOTION TO AMEND COMPLAINT
 {¶ 69} DGE asserts it was an abuse of discretion to deny its oral motion to amend its complaint on the day of trial. "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations."[41]
 {¶ 70} Under Civ.R. 15(A), once an answer to a complaint is served, a party may amend his complaint only by leave of the court. Leave to amend in good faith shall be freely given when justice so requires and will set forth a claim upon which relief could be granted.[42] When the defense is rendered timely and in good faith, and there is no stated or apparent reason for denying leave, the denial of leave to amend is an abuse of discretion.[43]
 {¶ 71} Just prior to opening statements, DGE told the judge that it intended to amend its complaint and present evidence on the issues of both bad faith and a breach of fiduciary duty, further arguing that it advised Stewart and Surety of its intentions to so amend as early as December of 1998.
 {¶ 72} In denying the motion, the judge noted the "only recent" nature of the motion and her belief that "plaintiff can reach a full resolution of their claims for relief without amending to a bad faith."[44] She stated that, "[I]t is a specific cause of action and there are specific defenses and so on with regard to that; and since it is only recent, this Court is not going to permit that."
 {¶ 73} DGE's April, 2001 pre-trial statement and motion in limine indicated that evidence would be presented at trial to establish bad faith by both Stewart and Surety. DGE asserts, therefore, that each impliedly consented to litigate the bad faith issue because it was "well known to them long before trial."[45]
 {¶ 74} Under Civ.R. 15(B), however, implied consent is not established merely because evidence bearing directly on an unpleaded issue is introduced without objection; rather, it must appear that the parties understood the evidence was aimed at the unpleaded issue.[46]
 {¶ 75} We find nothing in the record to support the contention that Stewart or Surety impliedly consented to a bad faith claim being litigated at trial, nor do we find that the judge considered the issue to be tried. She specifically noted the untimeliness of the motion and the specific defenses that are necessary when defending such a claim. As held by the Ohio Supreme Court:
{¶ 76} "[W]e note that the implication of Civ. R. 15(B) isthat a trial court may not base its decision upon an issue whichwas tried inadvertently. Whether an unpleaded issue is tried byimplied consent is to be determined by the trial court, whosefinding will not be disturbed, absent showing of an abuse ofdiscretion."[47]
 {¶ 77} It was not an abuse of discretion to deny the motion to amend.[48] DGE's first cross-assignment of error lacks merit.
I. MOTION TO COMPEL
 {¶ 78} DGE next claims it was error to fail to compel both Stewart and Surety to produce their claim files. A judge is vested with broad discretion on discovery matters, and the standard of review is whether there was an abuse of discretion.[49] "An appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights."[50] In addition, when attempting to overturn a discovery ruling, the aggrieved party must present evidence that the judge's actions were "unreasonable, arbitrary, or unconscionable."[51]
 {¶ 79} DGE cites Bone v. Vanliner Ins. Co.,[52] for the proposition that:
{¶ 80} "In an action alleging bad faith denial of insurancecoverage, the insured is entitled to discover claims filematerials containing attorney-client communications related tothe issue of coverage that were created prior to the denial ofcoverage."
 {¶ 81} This case is distinguishable on two grounds: DGE never asserted a bad faith claim until the day of trial, and we found that the judge did not abuse her discretion in denying the motion to amend to add such a claim. DGE's second assignment of error lacks merit.
 I. CONCLUSION {¶ 82} We find Stewart's first assignment of error, solely as it relates to the distinction between a lease and a license, to have merit; its second and third assignments of error to have merit, and Surety's second, third, fifth, sixth, seventh, and ninth assignments of error to have merit.
 {¶ 83} Judgments are affirmed in part, reversed in part and remanded.
APPENDIX A:
 Appellant stewart title guaranty company's assignments oferror
 "I. The trial court erred when it found that stewart wasobligated to defend and indemnify dge against the claims of ellerunder the terms of the policy of title Insurance between stewartand dge.
 II. The trial court erred when it issued summary judgmentagainst stewart finding that it had no cause of action againstpauline digeronimo as a matter of law and precluded stewart frompresenting evidence relevant to those claims during the trialbelow.
 III. The trial court erred when it awarded dge attorney's feesand costs totaling $114,864.90 as compensatory damages againststewart and surety on dge's breach of contract and indemnitycauses of action."
 Appellee/cross-appellant dge's cross-assignments of error
 "I. The trial court erred by denying dge's motion for leave toamend its third party complaint to add a bad faith claim.
 II. The trial court erred by denying dge's motion to compelthe claim files of surety and stewart."
 Appellant surety title agency inc.'s assignments of error
 "I. The trial court erred in ruling that surety breached itsfiduciary duties to dge as escrow agent. (12/21/01 judgmententry)
 II. The trial court erred in ruling that surety "breached itscontractual obligations to dge as title agent for stewart title."(12/21/01 judgment entry)
 III. Trial court erred in ruling that surety "breached thecontract to ensure dge against loss." (12/21/01 judgment entry)"
 IV. The trial court erred in entering judgment against suretybased on the exception in the title policy for rights of others,if any, in and to the billboard" where surety was expresslyauthorized by dge to except "matters set forth on the survey"from coverage under the title policy. (12/21/01 judgment entry)
 V. The trial court erred in entering an award of attorneys'fees and legal expenses against surety where there was neither acontractual or statutory basis for such an award nor any evidenceor finding of bad faith. (12/21/01 judgment entry; 7/9/03judgment entry)
 VI. The trial court erred in awarding attorneys' fees andcosts to dge in amount of $114,864.90 where insufficient evidenceexisted to support such an award. (12/21/01 judgment entry;7/9/03 judgment entry)
 VII. The trial court erred in entering summary judgment infavor of third party defendant pauline digeronimo on surety'scross claim. (4/17/00 order.)
 VIII. The trial court erred when it granted dge partialsummary judgment and found as a mater of law that dge lackedknowledge of eller media's interest in the billboard prior toclosing. (7/29/99 judgment entry; 1/19/00 order; 3/20/00 order.)
 IX. The trial court erred in finding that dge was entitled tocoverage under the title policy where eller media's interestamounted to no more than a license, not a real estate lease, andtherefore was excluded from coverage under exclusion 3(c) to thetitle policy. (7/29/99 judgment entry)."
It is ordered that the parties bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., Concurs.
 Michael J. Corrigan, A.J., Concurs in judgment only.
[1] The letter was dated May 15, 1998.
[2] Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367,370, 1998-Ohio-389, 696 N.E.2d 201, citing Dresher v. Burt,75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.
[3] Brief at 20.
[4] Peoples Building and Loan Co., v. Safeco Title InsuranceCompany of Maryland, (July 5, 1988), Montgomery App. No. 10569, citing Hutchinson v. J.C. Penney Cas. Ins. Co. (1985),17 Ohio St.3d 195, 478 N.E.2d 1000.
[5] December 21, 2001 Journal entry.
[6] Brief at 14, citing Schwartz v. Stewart Title GuarantyCo. (1999), 134 Ohio App.3d 601, 604, 731 N.E.2d 1159.
[7] Karabin v. State Auto. Mut. Ins. Co. (1984),10 Ohio St.3d 163, 462 N.E.2d 403.
[8] Motorists Mut. Ins. Co. v. Trainor (1973),33 Ohio St.2d 41, 294 N.E.2d 874.
[9] Ticor Title Ins. Co. v. American Resources (C.A.9, 1988),859 F.2d 772, 775.
[10] Mains v. State Auto. Mut. Ins. Co. (1997),120 Ohio App.3d 534, 538, 698 N.E.2d 488.
[11] Ticor Title Ins. Co. v. American Resources, supra at 775, (Emphasis added.); See, e.g., Space Conditioning Inc. v.Ins. Co. of North America (E.D.Mich. 1968), 294 F.Supp. 1290,1293, affirmed, (C.A.6, 1970), 419 F.2d 836.
[12] (1984), 9 Ohio St.3d 177, 459 N.E.2d 555 at syllabus.
[13] Stephens v. A-Able Rents Co. (1995), 101 Ohio App.3d 20,26, 654 N.E.2d 1315.
[14] Civ.R. 56(C).
[15] Black's Law Dictionary (6 Ed. 1999) 889.
[16] Schwartz v. Cmmw. Land Title. Ins. Co. (E.D.Pa. 1974),374 F.Supp. 564, 574.
[17] Squire v. Branciforti (1936), 131 Ohio St. 344,2 N.E.2d 878, paragraph one of the syllabus.
[18] Pippin v. Kern-Ward Bldg. Co. (1982), 8 Ohio App.3d 196,198, 456 N.E.2d 1235.
[19] Spalding v. Coulson (1995), 104 Ohio App.3d 62, 81,661 N.E.2d 197.
[20] Thomas v. The Guarantee Title Trust Company (1910),81 Ohio St. 432, 442, 91 N.E. 183.
[21] Hunter Building Renovation v. Miller (Feb. 15, 1996), Cuyahoga App. No. 67131.
[22] Stryker Farms Exch. v. Mytczynskyj, (1998),129 Ohio App.3d 338, 341-342, 717 N.E.2d 819, citing Dobell v. Koch
(1921), 16 Ohio App. 41, 43.
[23] State ex rel. The V Companies v. Marshall,81 Ohio St.3d 467, 469, 1998-Ohio-329, 692 N.E.2d 198, 201.
[24] Strock v. Pressnell (1988), 38 Ohio St.3d 207, 216,527 N.E.2d 1235, citing Stamper v. Parr-Ruckman Home Town MotorSales (1971), 25 Ohio St.2d 1, 3, 265 N.E.2d 785.
[25] In re Termination of Employment of Pratt (1974),40 Ohio St.2d 107, 115, 321 N.E.2d 603.
[26] Donelan v. Keybank, (March 23, 2000), Cuyahoga App. No. 75878, citing In re Termination of Employment, supra.
[27] Cairns v. Ohio Sav. Bank (1996), 109 Ohio App.3d 644,649, 672 N.E.2d 1058, citing Umbaugh Pole Bldg. Co. v. Scott
(1979), 58 Ohio St.2d 282, 390 N.E.2d 320, syllabus.
[28] Umbaugh, supra.
[29] Calhoun v. McCullough (April 25, 1991), Cuyahoga App. No. 60271; See, Saad v. Rodriguez (1986), 30 Ohio App. 3d 156, 158;Pippin v. Kern-Ward Bldg. Co., supra.
[30] Pippin v. Kern-Ward Building Co. (1982),8 Ohio App.3d 196, 456 N.E.2d 1235.
[31] Einhorn v. Ford Motor Co. (1990), 48 Ohio St. 3d 27, 29,548 N.E.2d 933.
[32] December 21, 2001 Journal Entry.
[33] July 9, 2003 Journal Entry.
[34] (N.D. Ohio January 28, 2000), No. 1:92CV1747.
[35] Abt, supra at 29 (Internal Citations Omitted).
[36] (1982), 2 Ohio St.3d 122, 443 N.E.2d 497.
[37] Allen, at paragraph two of syllabus.
[38] December 21, 2001 Journal Entry.
[39] Nelson v. Nimylowycz (July 13, 1995), Cuyahoga App. No. 67901.
[40] In re Wood (1977), 55 Ohio App.2d 67, 73-74,379 N.E.2d 256.
[41] State v. Jenkins (1984), 15 Ohio St.3d 164, 222,473 N.E.2d 264, quoting Spalding v. Spalding (1959), 355 Mich. 382,384-385, 94 N.W.2d 810.
[42] Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 175,297 N.E.2d 113.
[43] Hoover v. Sumlin (1984), 12 Ohio St.3d 1, 6,465 N.E.2d 377.
[44] Tr. at 12-14.
[45] Appellee/Cross-Appellant DGE's brief at 35.
[46] The State (Township of Bainbridge) ex rel. Evans v.Bainbridge Township Trustees (1983), 5 Ohio St.3d 41,448 N.E.2d 1159, at paragraph two of syllabus; MBI Motor Company, Inc. v.Lotus/East, Inc. (C.A. 6, 1974), 506 F.2d 709. We note that Fed.R.Civ.P. 15(b) is virtually identical to Ohio Civ.R. 15(b).
[47] State ex rel. Evans, supra; See, Chesapeake OhioRailway Co. v. Newman (C.A.6, 1957), 243 F.2d 804.
[48] Serrano v. McCormack Baron Mgmt., Inc. (Dec. 7, 2000), Cuyahoga App. No. 77970, at 8-9. See, also, Turner v. CentralLocal School District (1999), 85 Ohio St.3d 95, 706 N.E.2d 1261
(motions to amend pleadings pursuant to Civ.R. 15(A) should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party).
[49] Mauzy v. Kelly Services, Inc., 75 Ohio St.3d 578, 592,1996-Ohio-265, 664 N.E.2d 1272.
[50] Rossman v. Rossman, (1975), 47 Ohio App.2d 103, 110,352 N.E.2d 149.
[51] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
[52] 91 Ohio St.3d 209, 216, 2001-Ohio-27, 744 N.E.2d 154.